UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| ROTECH HEALTHCARE INC. ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 09-CV-2243 |
| ) | |
| SYNTHIA ANN HUFF, ) | |
| ) | |
| Defendant. ) | |

## OPINION

This case is before the court for ruling on cross motions for summary judgment filed by Plaintiff, Rotech Healthcare Inc. (Rotech) and Defendant, Synthia Ann Huff (Huff).[1] Both parties are seeking judgment as a matter of law on Rotech's Complaint (#1) which was brought pursuant to section 502(a)(3) of the Employee Retirement Income Security Act of 1974, as amended (ERISA), 29 U.S.C. § 1132(a)(3). This court has carefully reviewed the arguments of the parties and the documents provided by the parties. Following this careful review, Huff's Motion for Summary Judgment (#9) is GRANTED and Rotech's Motion for Summary Judgment (#10) is DENIED.

## FACTS

Huff has experienced back and leg pain since in 1995. She was eventually diagnosed with L5-S1 spondylolisthesis and foraminal stenosis. In May 2004, Dr. Eric Potts of the Indianapolis Neurosurgical Group (ING) performed an L5-S1 interbody fusion on Huff, which alleviated the pain to some degree. Following the procedure, Huff saw Dr. Potts on June 21, 2004, at which time she

---

[1] Defendant was formerly known as Synthia Ann Mayer and some of the documentation in this case refers to her by that name. This court will use her current name, Synthia Ann Huff, throughout this Opinion.

had sacroiliac joint pain, low back pain and right posterior thigh pain, but had good motor function and her fusion was healing satisfactorily. Huff saw Dr. Potts on September 13, 2004, at which time she had some low back pain, had responded well to therapy and her fusion was still present. Huff was employed by Rotech and had group health insurance through Care First Blue Cross/Blue Shield (Care First).

On October 20, 2004, Huff was involved in an automobile accident and was injured. Her injuries were caused by Robert T. Hawkins, Jr., who disregarded a stop sign and struck Huff's vehicle with his vehicle. Following the collision, Huff was transported by ambulance to a hospital emergency room in Danville, Illinois. She was given medical care and treatment and was released to return home that evening. Subsequently, Huff experienced increased pain and returned to ING on November 17, December 27, and December 30, 2004. During these visits, Huff complained of left leg pain and back pain. Huff did not return to ING until May 25, 2005. On her May 25 visit, Huff had worsening right side low back pain. Her fusion was solid with good decompression of the spinal canal. Huff continued to receive treatment at ING. In June 2006, Dr. Potts determined that the conservative treatment provided to Huff was unsuccessful and he referred her to Dr. Derron Wilson, who was also a physician with ING.

On July 1, 2006, Huff no longer had health insurance through Care First. She became insured by United Healthcare Insurance Company (United Healthcare) under the Choice Plus Plan for Rotech (Plan). The Plan is an "employee welfare benefit plan" within the meaning of ERISA and is maintained for eligible employees of Rotech and their family members. Rotech is the Plan Administrator of the Plan and United Healthcare is the Claims Administrator of the Plan. After July 1, 2006, Huff continued to receive treatment at ING and had a spinal cord stimulator implanted by

2

Dr. Wilson in September 2007. The Plan has paid $62,761.63 in medical benefits for Huff's treatment since July 1, 2006.

On September 21, 2006, Huff filed a lawsuit against Hawkins and his employers in the circuit court of Vermilion County, Illinois. Plaintiff sought monetary recovery for the injuries she sustained in the collision. On July 2, 2007, Huff signed, under oath, answers to interrogatories in the circuit court case. Huff stated that she received services from ING, with regard to her injuries from the collision, on August 9, 2006, August 31, 2006, September 22, 2006 and October 24, 2006. Huff also stated that she was unable to work because of her personal injuries on specified days from October 20, 2004 through January 25, 2007. Huff stated that she had received payment from her health insurance through United Healthcare for the injuries alleged in her complaint in the amount of $61,845.29.

The Plan permits the Plan Administrator and Claims Administrator to delegate their discretionary authority to other persons or entities who provide services in regard to the administration of the Plan. United Healthcare has delegated to Ingenix, Inc. (Ingenix) the responsibility and authority to seek and obtain reimbursement of the medical benefits that the Plan provided to Huff. In the circuit court action, United Healthcare, through Ingenix, claimed that it was entitled to a lien against any recovery obtained by Huff from any of the defendants in the amount of $62,761.63.

On August 18, 2008, the deposition of Dr. Potts was taken in the circuit court case. Dr. Potts testified that he first saw Huff in March 2004, at which time she complained of back pain and right leg pain. Dr. Potts testified that he performed the L5-S1 fusion on May 11, 2004. Dr. Potts stated that Huff still had some pain when he saw her on September 13, 2004. Dr. Potts testified that the

3

accident in October 2004 caused a temporary exacerbation of Huff's underlying condition which manifested itself in her left leg. Dr. Potts testified that Huff was seen at ING on November 17, 2004, and on December 27, 2004, at which time Huff complained of left leg pain and back pain. Dr. Potts testified that, on December 30, 2004, Huff had left leg and back pain and received a steroid injection. Dr. Potts next saw Huff on May 25, 2005. Huff reported that she had slight worsening of the right side low back pain at that time. Dr. Potts saw Huff on August 31, September 22, and October 17, 2005. Dr. Potts testified that Huff described right side pain on these visits. Dr. Potts testified:

> I think the pain that was present at that point was similar to the pain that she had preoperatively, you know, before the accident. The pain that – whereas the left leg pain that was more temporally related to the auto accident and transient I think is easier to relate back to the auto accident of 2004.

Dr. Potts testified that he believed that the October 2005 right buttock pain was an expression of her underlying disease of the back that she had before the October 20, 2004, collision. Dr. Potts testified that he believed it was difficult to relate Huff's right-sided symptoms back to the accident. Dr. Potts testified that it was his opinion that "none of the medical care that was provided to [Huff] after January 1st of 2005 was causally related to the automobile collision she was involved in on October 20th, 2004." Dr. Potts testified that the January 13, 2006, procedure to remove instrumentation from Huff's L5-S1 fusion and the spinal cord stimulator implantation performed by Dr. Wilson were not causally related to the October 2004 automobile collision.

Dr. Wilson's deposition was also taken on August 18, 2008. Dr. Wilson testified that he

4

began to see Huff in June 2006. Dr. Wilson testified that, based upon a review of Huff's chart, he thought the motor vehicle accident aggravated her conditions. Dr. Wilson was asked whether the implantation of the spinal cord stimulator, which was performed in September 2007, would have been necessary but for Huff's involvement in a motor vehicle collision. Dr. Wilson stated:

> It's very difficult to – it's very difficult to determine for patients that have spondylolisthesis and the fibrosis that she had, it's certainly a setup to have that type of problem. Whether it was the accident or another trauma, it certainly would have been possible. So it would be speculation. But I certainly don't think that it's – I think – I think it would be speculation.

Dr. Wilson was then asked if he had an opinion based upon a reasonable degree of medical certainty or more likely than not whether the collision Huff was involved in resulted in an aggravation of her pain. Dr. Wilson answered, "I think it's more likely than not to have aggravated her underlying symptoms."

On April 20, 2009, Huff filed a Motion to Adjudicate Subrogation Lien in the circuit court case. Huff stated that Dr. Potts was of the opinion that none of the pain or symptoms she experienced after December 31, 2004, were causally related to her collision with Hawkins. Huff stated that Dr. Wilson did not begin treating her until June 2006 and was unable to offer any opinions concerning the effect that the collision in October 2004 had on her underlying condition. Huff stated that, until June 30, 2006, her health insurer was Care First. Between October 20, 2004, and June 30, 2006, Care First paid medical benefits to her health care providers totaling $14,340.84 arising out of the treatment she received for her L5-S1 spondylolisthesis and foraminal stenosis.

Huff stated that Care First claimed a gross lien against her recovery in the sum of $3,103.85, which was the amount paid by Care First to Huff's health care providers between October 20, 2004 and December 31, 2004. Huff stated that Care First was not asserting a lien for any amounts paid after December 31, 2004. Huff argued United Healthcare and Ingenix were not entitled to a lien against any recovery she obtained in the circuit court action because none of the medical care and treatment she received after she became insured by United Healthcare on July 1, 2006, was necessitated by any injuries she suffered as a result of her collision with Hawkins. Huff stated:

> Ingenix has been provided with all information relevant to its claimed lien, including the depositions of Drs. Potts and Wilson. There is no evidence, medical or otherwise, indicating that any of the payments made by United Healthcare to [Huff's] healthcare providers were for medical care to treat injuries proximately caused by [Huff's] October [20], 2004, collision with Hawkins. Ingenix has been requested to relinquish any claim or lien against any recovery obtained by [Huff] in this case, but has not done so. Neither United Healthcare nor Ingenix has any factual or legal basis to assert a lien against any recovery obtained by [Huff] in this case.

On May 22, 2009, United Healthcare and Ingenix filed a Notice of Removal in Case No. 09-CV-2138 and removed the Motion to Adjudicate Subrogation Lien to this court. They claimed that Huff's claim against them was completely preempted by ERISA. Huff filed a motion to remand the case back to the circuit court of Vermilion County. On September 16, 2009, United States Magistrate Judge David G. Bernthal entered a Report and Recommendation and recommended

6

granting Huff's motion to remand. On October 9, 2009, this court entered an Order accepting the Report and Recommendation. Accordingly, the case was remanded to the circuit court of Vermilion County.

PROCEDURAL HISTORY

On October 1, 2009, Rotech filed its Complaint (#1) in this case. Rotech stated that the action was brought under section 502(a)(3) of the ERISA, 29 U.S.C. § 1132(a)(3). Rotech stated that it paid benefits to Huff under the terms of a welfare benefit plan (Plan) and was seeking appropriate equitable relief based upon the subrogation and reimbursement provisions of the Plan, including the imposition of a constructive trust on any recovery made as compensation to Huff for injuries caused by the acts of a third party. Rotech stated that the Plan Administrator had determined that Huff was required to reimburse the Plan for the benefits it provided in treatment of the injuries Huff sustained in the accident. Rotech also sought an award of reasonable attorneys' fees and costs.

On December 15, 2010, both Huff and Rotech filed Motions for Summary Judgment (#9, #10) with attached exhibits. Rotech stated in its Motion for Summary Judgment that "Huff now holds or shortly will hold proceeds from her tort recovery in an amount no less than $62,761.63." Rotech asked this court to enter judgment in its favor and award the equitable relief it sought against Huff, including the imposition of a constructive trust over the settlement funds she has received or may receive from the circuit court action. Rotech also stated that it should be awarded its reasonable attorneys' fees.

In her Motion for Summary Judgment, Huff stated that she has not agreed to settle her claim against Hawkins, his employers or their respective insurers, has not executed a settlement agreement and has received no money to settle her claim. Huff filed an affidavit in support of her Motion for

7

Summary Judgment. Huff stated:

> State Farm Automobile Insurance Company, Hawkins' liability carrier, has offered $25,000.00 to settle my suit. I have not accepted this offer, have not signed or otherwise executed any written settlement agreement, and have not been paid any money by any of the defendants or their insurance carriers to settle my claim. However, Hawkins' counsel has been informed of my intention to accept State Farm's offer in the event the lien claimed by Rotech, United Healthcare or Ingenix is adjudged invalid. On April 20, 2009, I filed my Motion to Adjudicate Subrogation Lien in my pending state court personal injury against Hawkins and his employers, which motion remains pending.

The parties have filed Responses (#13, #14) to the Motions for Summary Judgment and Replies (#16, #17). The Motions are now fully briefed and before the court for ruling.

ANALYSIS

I. SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>see also</u> <u>Semien v. Life Ins. Co. of N. Am.</u>, 436 F.3d 805, 812 (7th Cir. 2006). In this case, both parties have moved for summary judgment and have asserted there is no genuine dispute as to any material fact. When cross motions for summary judgment have been filed, this court must review the record construing all inferences in favor of the party against whom the motion under

8

consideration is made.  See Mote v. Aetna Life Ins. Co., 502 F.3d 601, 606 (7th Cir. 2007); see also Lawrence v. Life Ins. Co. of N. Am., 2007 WL 2410180, at *5 (N.D. Ill. 2007) (cross motions for summary judgment demand a "dual perspective").

## II.  STANDARD UNDER ERISA

It is essentially undisputed that the terms of the Plan give Rotech, as the plan administrator, the right to seek reimbursement if a third party caused the injury for which benefits were paid and payment is received from the third party.  It is also undisputed that Rotech, as a fiduciary under ERISA, has the authority to bring this action pursuant to § 502(a)(3) of ERISA.  See Sereboff v. Mid Atl. Med. Servs., Inc., 547 U.S. 356, 361-63 (2006).  In addition, it is undisputed that the Plan confers discretion upon the Plan Administrator and the Claims Administrator to interpret benefits under the Plan, interpret the other terms, conditions, limitations and exclusions of the Plan and make factual determinations related to the Plan and its benefits.  "When the administrator has such discretionary authority, as the vast majority now do, the court applies a . . . deferential standard, seeking to determine only whether the administrator's decision was 'arbitrary and capricious.'" Holmstrom v. Metro. Life Ins. Co., 615 F.3d 758, 766 (7th Cir. 2010), citing Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 111 (2008).  Under the arbitrary and capricious standard, courts will "overturn a benefit administrator's decision only if the decision is 'downright unreasonable.'" Black v. Long Term Disability Ins., 582 F.3d 738, 745 (7th Cir. 2009), quoting Mote, 502 F.3d at 606.

Review under this deferential standard is not a rubber stamp, however, and a court will not uphold a decision when there is an absence of reasoning in the record to support it.  See Holmstrom, 615 F.3d at 766; Black, 582 F.3d at 745.  A plan's determination must have a reasoned basis to survive judicial review, even under the deferential standard of review.  Holmstrom, 615 F.3d at 774.

"Administrators may not arbitrarily refuse to credit [a plan member's] reliable evidence, including opinions of a treating physician." See Holmstrom, 615 F.3d at 774-75. A court's review under the arbitrary and capricious standard is limited to the evidence in the administrative record. Hess v. Reg-Ellen Machine Tool Corp., 423 F.3d 653, 662 (7th Cir. 2005); see also Krolnik v. Prudential Ins. Co. of Am., 570 F.3d 841, 843 (7th Cir. 2009); Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan, 195 F.3d 975, 981-82 (7th Cir. 1999).

### III. HUFF'S MOTION FOR SUMMARY JUDGMENT

In this case, Huff is correct that Rotech has not provided this court with the administrative record or any affidavit stating what documents comprise the administrative record. However, it is clear that the Plan Administrator was provided with the deposition transcripts of Dr. Potts and Dr. Wilson and also had Huff's sworn answers to interrogatories and Huff's Motion to Adjudicate Subrogation Lien. Based upon these documents, this court agrees with Huff that there is no reasoned basis for the Plan Administrator's determination that the Plan paid benefits to Huff for injuries she sustained in the October 2004 accident so that Huff is required to reimburse the Plan for the benefits it provided. This court concludes that this determination completely ignores the reality of the situation and is "downright unreasonable." See Black, 582 F.3d at 745. This determination could only have been made based upon "selective readings" and must be considered arbitrary and capricious. See Holmstrom, 615 F.3d at 777.

The reality of the situation in this case is that Huff's long-standing problems were aggravated by the accident caused by Hawkins in October 2004. Huff obviously believed that the treatment she received following the accident was necessary because of the injuries she suffered in the accident. This included the treatment she received after July 1, 2006, when she began receiving health

insurance benefits from the Plan. Huff therefore sued Hawkins and his employers seeking to recover for her injuries and signed answers to interrogatories, under oath, stating that the treatment she received from ING, and for which she received benefits from the Plan, was caused by the October 2004 accident. However, during discovery in the circuit court case against Hawkins and his employers, the deposition of Dr. Potts was taken. Dr. Potts began treating Huff in March 2004 and performed surgery for her back problems prior to the October 2004 accident. Dr. Potts testified very clearly that any treatment provided to Huff after January 1, 2005, was not related to the October 2004 accident. Dr. Potts provided a logical explanation for this conclusion, that the accident resulted in left side pain which was resolved by the end of 2004. Huff's treatment following the end of 2004 was for right side pain. Dr. Potts testified that he believed it was difficult to relate Huff's right-sided symptoms back to the accident. It was Dr. Potts' opinion, based upon his lengthy treatment of Huff, that Huff's treatment after the end of 2004 was not related to the automobile collision.

Rotech has argued that it could, within its discretion, rely upon Huff's sworn answers to interrogatories and the opinion of Dr. Wilson in concluding that it is entitled to be reimbursed out of any recovery Huff receives in the circuit court litigation against Hawkins and his employers. This court does not agree. This court first concludes that any reliance on Dr. Wilson's opinion is "downright unreasonable." Dr. Wilson first saw Huff in June 2006, more than one and one-half years after the October 2004 accident, when she was referred to him by Dr. Potts. Dr. Wilson testified that any opinion regarding whether the spinal cord stimulator he implanted in September 2007 was necessary because of the collision "would be speculation." Dr. Potts, by contrast, testified that the spinal cord stimulator implantation performed by Dr. Wilson was <u>not</u> causally related to the October 2004 automobile collision. Dr. Wilson did testify, unremarkably, that the accident

11

aggravated Huff's underlying symptoms. Notably, Dr. Wilson provided no details regarding this aggravation or how long the aggravation lasted. Rotech argued that it could reasonably accept Dr. Wilson's opinion that Huff's symptoms were aggravated by the October 2004 collision and conclude that her treatment after July 1, 2006 was caused by the collision. Rotech argued that Dr. Wilson actually rendered the medical treatment at issue and Dr. Potts did not see Huff after July 1, 2006, the date the Plan began providing her medical benefits.

This court recognizes that a court must defer to the plan administrator's choice between competing medical opinions so long as it is rationally supported by the record evidence. See Black, 582 F.3d at 745-46, citing Semien, 436 F.3d at 812. This court concludes that there is no rational support in the record for Rotech's choice to rely on Dr. Wilson's vague, unspecific opinion rather than Dr. Potts' opinion. Dr. Wilson testified that he could not give an opinion regarding whether the treatment he provided was necessary because of the collision because any such opinion "would be speculation." Moreover, this court concludes that Rotech could not reasonably disregard Dr. Potts' opinion on the basis that Dr. Potts did not see Huff after July 1, 2006. First of all, it is not true. Dr. Potts testified that he saw Huff on August 9, 2006. In addition, Dr. Potts provided treatment to Huff before the October 2004 accident, shortly after the accident and well into 2006, more than one and one-half years after the accident. There is no reasoned basis for disregarding Dr. Potts' clear, well explained opinion and accepting the vague, admittedly speculative, opinion provided by Dr. Wilson, who did not see Huff until more than one and one-half years after the accident. This court concludes that Rotech arbitrarily refused to accept reliable evidence, the deposition testimony of Huff's treating physician, Dr. Potts. See Holmstrom, 615 F.3d at 774-75. Rotech 's rejection of Dr. Potts' testimony could only have been "based on selective readings that

are not reasonably consistent with the entire picture." See Holmstrom, 615 F.3d at 777.

This court further concludes that reliance on Huff's sworn answers to interrogatories was also unreasonable. Huff apparently sincerely believed that the treatment she received from the time of the accident to 2007 was caused by the accident. However, there is no reason to believe that Huff has any medical expertise. Following Dr. Potts' deposition testimony, Huff had to re-evaluate her case and conclude that she could not recover for any treatment she received after the end of 2004 or for any pain and suffering and lost wages after the end of 2004. That is why she is now willing to settle her case for $25,000, if the lien is declared invalid. This court notes that it is undisputed that Care First paid medical benefits to Huff's health care providers totaling $14,340.84 arising out of the treatment she received for her L5-S1 spondylolisthesis and foraminal stenosis. Care First has only claimed a lien against any recovery Huff receives in the sum of $3,103.85, which was the amount paid by Care First to Huff's health care providers between October 20, 2004 and December 31, 2004. Consistent with Dr. Potts's testimony, Care First has not asserted a lien for any amounts paid after December 31, 2004.

Rotech has insisted that Huff is judicially estopped from changing the position she took in her answers to interrogatories that the treatment she received on August 9, 2006, August 31, 2006, September 22, 2006 and October 24, 2006 was related to the injuries she received in the accident. This court does not agree.

Rotech cited New England Emp. Benefits Group v. Klapperich, 2000 WL 1648959 (N.D. Ill. 2000) in support of its judicial estoppel argument. This court concludes that Klapperich is clearly distinguishable. In Klapperich, the ERISA plan paid medical benefits of $76,820.10 to the employee. The employee then entered into a settlement agreement for $280,000.00 with the party

13

who caused her injuries. The plan sought reimbursement out of the settlement proceeds for the benefits it paid. The employee argued that the plan's claim for reimbursement included medical expenses unrelated to the medical malpractice injury. Klapperich, 2000 WL 1648959, at 3. The court rejected this argument because the employee submitted no admissible evidence to support it. Klapperich, 2000 WL 1648959, at *3. The court also noted that the employee was judicially estopped from making this argument because she "argued in her medical malpractice action in state court that the same injuries she now argues are unrelated to the malpractice were related to the malpractice in that case." Klapperich, 2000 WL 1648959, at *3 n.2.

The doctrine of judicial estoppel "prevents a party who has successfully taken a position in one litigation from taking the opposite position in a subsequent litigation." DeGuiseppe v. Vill. of Bellwood, 68 F.3d 187, 191 (7th Cir. 1995) (emphasis added), quoting Czajkowski v. City of Chicago, 810 F. Supp. 1428, 1434 (N.D. Ill. 1992). In that circumstance, the party's prevailing position in previous litigation is dispositive. See DeGuiseppe, 68 F.3d at 191; Klapperich, 2000 WL 1648959, at *3 n.2. The doctrine is equitable and is "intended to protect the courts from being manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories." Levinson v. United States, 969 F.2d 260, 264 (7th Cir. 1992). In order for judicial estoppel to apply, "the party to be estopped must have convinced the first court to adopt its position; a litigant is not forever bound to a losing argument." Levinson, 969 F.2d at 264-65; see also Matter of Cassidy, 892 F.2d 637, 641 (7th Cir. 1990).

In this case, unlike Klapperich, Huff has not successfully recovered the $62,761.63 in benefits the Plan has paid for her treatment in the circuit court litigation. In fact, it is safe to say that, because of Dr. Potts' deposition testimony, Huff cannot recover for any treatment she received after

14

January 1, 2005, a date long before the effective date of the Plan, July 1, 2006. Huff's position in the circuit court case was not successful and she is not forever bound to her losing argument. Therefore, judicial estoppel has no application in this case. Furthermore, unlike Klapperich, Huff has presented evidence, Dr. Potts' testimony, to support her argument that the benefits paid by the Plan were not related to the October 2004 collision.[2]

This court concludes, based upon the documentation which is part of the administrative record, that Rotech's determination that it is entitled to reimbursement from any recovery Huff receives in the circuit court litigation against Hawkins and his employers is arbitrary and capricious. Even construing all inferences in Rotech's favor, it is clear that Rotech is not entitled to reimbursement for benefits the Plan paid after July 1, 2006. The only reasonable conclusion which can be drawn from the evidence is that the treatment Huff received after that date was not related to the October 2004 collision. This court therefore concludes that Huff is entitled to summary judgment on Rotech's claim for reimbursement. Because of this conclusion, Rotech's Motion for Summary Judgment must be denied.

IT IS THEREFORE ORDERED THAT:

(1) Huff's Motion for Summary Judgment (#9) is GRANTED. Judgment is entered in favor of Huff and against Rotech on Rotech's Complaint (#1).

---

[2] Rotech also cited the case of Walker v. Wal-Mart Stores, Inc., 27 F. Supp. 699 (S.D. Miss. 1998) in support of its judicial estoppel argument. This court concludes that this district court decision from outside of the Seventh Circuit has little, if any, persuasive value to this court. In any case, this court concludes that the district court's opinion and the Fifth Circuit opinion affirming the district court, Walker v. Wal-Mart Stores, Inc., 159 F.3d 938 (5th Cir. 1998), are distinguishable. In this case, Huff's change in position was not "disingenuous" but was based upon clear testimony from her treating physician that the treatment provided after January 1, 2005, was not causally related to the automobile accident.

(2) Rotech's Motion for Summary Judgment (#10) is DENIED.

(3) The final pretrial conference set for April 15, 2011, at 2:30 p.m. and the jury trial set for April 25, 2011, at 9:00 a.m. are hereby VACATED.

(4) This case is terminated.

ENTERED this 8th day of March, 2011

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE